# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JERRY REESE,

:

                 Petitioner,                           Case No. 3:03-cv-294

                                  :        District Judge Thomas M. Rose
     -vs-                                  Chief Magistrate Judge Michael R. Merz

TERRY A. TIBBALS, Warden,

                                  :

                 Respondent.

---

## REPORT AND RECOMMENDATIONS

---

This habeas corpus case is before the Court for decision on the merits.

Petitioner brought this action to seek relief from his conviction and sentence in the Clark County Common Pleas Court to an aggregate term of confinement of five and one-half years upon convictions for receiving stolen property and possession of criminal tools.

Proceeding *pro se*, Petitioner pleads the following four grounds for relief:

> **Ground One:** When a defendant raises a conflict of interest in his attorney's representation of himself and his co-defendant under the Sixth Amendment to the United States Constitution, the court must hold a meaningful dialogue to determine if such a conflict exist[s] in contravention of his rights under the Fourteenth Amendment to the United States Constitution.

> **Ground Two:** The trial court violated the Defendant's Sixth Amendment right to effective assistance of counsel due to his attorney conflict of interest between he and his co-defendant in contravention of his Fourteenth Amendment to the United States Constitution.

**Ground Three:** The Court of Appeals erred in determining if the trial court erred in failing to suppress evidence obtained from a felony traffic stop for which there was no probable cause in violation of Petitioner['s] Fourth Amendment and Fourteenth Amendment rights to the U.S. Constitution.

**Ground Four:** The Court of Appeals erred in denying the Appellant's application for re-opening since the trial court sentenced the Appellant based upon incriminating statements which were completed [sic] from him at his sentence hearing, in contravention of his rights under the Fifth Amendment to the United States Constitution.

Amended Petition, Doc. No. 11, at i[1].

## Procedural History

Petitioner and his co-defendant Johnson were indicted by the Clark County Grand Jury for various felony theft offenses. Both defendants were represented by Attorney Cozette Snead. She filed a motion to suppress the physical and statement evidence on June 13, 2001, which was denied after hearing the next day. The trial commenced and concluded on June 15, 2001, and Petitioner was sentenced on June 18, 2001.

Through new counsel, David K. Wehner, Petitioner directly appealed to the Ohio Court of Appeals raising seven assignments of error including (1) attorney conflict of interest, (2) ineffective assistance of trial counsel, (3, 4, & 5) insufficiency of the evidence in certain respects, (6) improper imposition of a consecutive sentence for one of the counts, and (7) improper imposition of maximum consecutive sentences. The Court of Appeals affirmed the conviction and sentence. *State v. Reese*, 2002 Ohio App. LEXIS 841 (Ohio App. 2d Dist. March 1, 2002).

---

[1]These four grounds for relief are listed in the Amended Petition as the First through Fourth "Procedural Postures."

-2-

Through different counsel, attorneys George Katchmer and Matthew Arntz, Petitioner appealed to the Ohio Supreme Court, raising only one proposition of law which mirrors his first ground for relief in the instant petition. The Ohio Supreme Court declined jurisdiction of the case. On May 30, 2002, Petitioner also filed a timely application to reopen his direct appeal, asserting Mr. Wehner was ineffective for failure to raise as error (1) trial court denial of the suppression motion, (2) trial court compulsion to speak at his sentencing hearing, and (3) trial court error in admitting the testimony of two undisclosed witnesses. Reopening was denied on February 7, 2003. A motion for reconsideration was also denied after this case was filed.

On November 28, 2002, Petitioner filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 through attorney Katchmer. The petition asserts ineffective assistance of trial counsel and was denied on September 9, 2003; subsequent appeals to the Second District Court of Appeals and the Ohio Supreme Court were unsuccessful.

Petitioner filed the instant Petition in the United States District Court of the Northern District of Ohio, his district of confinement, on July 10, 2003. Judge Potter of that court transferred the case here, pursuant to 28 U.S.C. § 2241(d), this being the district in which the conviction was obtained.

On Petitioner's Motion (Doc. No. 12), the Court held these proceedings in abeyance pending completion of state court process. After the state court proceedings were completed, the Court ordered Petitioner to file his traverse which he timely completed on December 6, 2004 (Doc. No. 32). The case is therefore ripe for decision.

## Analysis

## Ground One

In his first ground for relief, Petitioner asserts that the trial court denied him his right to effective assistance of counsel under the Sixth and Fourteenth Amendments by not conducting a "meaningful dialogue" to determine if there was a conflict of interest.

This claim was presented to and decided by the Ohio courts on the merits. The Supreme Court has recently elaborated on the standard of review of state court decisions in federal habeas corpus:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law. See *Williams v. Taylor*, 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To these ends, § 2254(d)(1) provides:
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."
>
> As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S., at 404-405, 120 S.Ct. 1495. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405-406, 120 S. Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our

-4-

decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407-408, 120 S.Ct. 1495.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495.  See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685; 122 S. Ct. 1843, 1849-50; 152 L. Ed. 2d 914 (2002).  Thus this Court

must begin its analysis by reviewing the state court decision on this claim.  The Ohio Court of

Appeals analyzed the claim as follows:

Both the first and second assignments of error address whether Reese's trial counsel was operating under a conflict of interest. Accordingly, we will address these assignments of error together. Throughout the proceedings in this case, Reese and Johnson were represented by the same attorney, Cozette Snead. On the day before trial was supposed to begin, Ms. Snead filed a motion to suppress on behalf of her clients. The trial court, delaying the start of trial, held a hearing and then overruled the motion. During this same time period, the prosecution made a plea offer in which both defendants could receive three years for all counts. The only contingency was that both defendants accept the offer.After a few hours, the court and the parties came back on the record, and Ms. Snead reported that Johnson wanted to accept the plea but that Reese did not. At that point, the following colloquy occurred:

MS. SNEAD: It has come to my attention that Mr. Johnson and Mr. Reese have different needs, desires, want to proceed differently. It is very difficult for me, then, to represent both of them at this time.  I would ask to withdraw from Mr. Reese's case who indicated he wanted to obtain his separate counsel, and I would ask the Court to inquire further of Mr. Reese.

THE COURT: Well, this only came up because of the plea agreement, I believe.

MS. SNEAD: I'm not sure if that's his only reason.

THE COURT: All right. Well, we're here at the trial; and the case has been pending six months. There doesn't appear to be any conflict at this point other than the statement that one defendant wanted to accept the plea agreement, the other one did not. The State has no obligation to make any modification to the indictment. They made a proposal. It was a joint proposal which, as indicated, was agreeable to one defendant and not the other, but that would not change the nature of the charges or the situation with respect to trial. Is there anything else you want to put on the record?

MS. SNEAD: I don't know if Mr. Reese has any other reasons.

THE COURT: Well, I don't either. Do you want your client to make a statement?

MS. SNEAD: In reference to that issue, if he has anything further he would like the Court to know, yes, Your Honor.

THE COURT: All right.

[MR.] REESE: Good afternoon. In deference for a request for a new counsel, it would be the fact that I felt that she filed the motion for - she filed the motion yesterday for - what was it?

MS. SNEAD: Suppression.

[MR.] REESE: For suppression and I didn't think it was adequate amount of time for doing so. So it leads me to believe that it's a possibility that she would be ineffective as far as representing me. You know, she filed the motion yesterday. You heard it today. I mean, I just felt that she didn't have enough time to do so; and it should have been done before then and being that she filed it yesterday and you heard it today, there was no way within an amount of reason that she would have been properly prepared. If she's not properly prepared - wasn't properly prepared for that motion, then it leads me to believe there's a possibility that she's not properly prepared to represent me as my attorney on any other pleading factors involved here.

THE COURT: All right. Thank you. You may be seated. Well, the Court doesn't find that point to be well taken. I think the available evidence on the issue on the Motion to Suppress was presented. The Court heard the probable cause issue, and the entire applicable evidence was considered. The timing of the motion doesn't affect the

quality of the motion; however, the Court did hear the applicable evidence and clearly determined that the officer had probable cause for the stop and the search of the vehicle. Therefore, I don't find your attorney is inadequate. I know she's an experienced criminal lawyer, has considerable experience in criminal cases from her past appearances here in this court so I think you are represented by competent counsel; and she is prepared to go forward. I've heard nothing to the contrary that she isn't prepared. We were prepared to start this case earlier today, and with the motion it's now postponed until tomorrow so that we can proceed at 9 a.m. tomorrow on the merits of the case.

Both defense counsel and the court have an affirmative duty to ensure that conflicts do not interfere with a defendant's representation. *State v. Dillon* (1995), 74 Ohio St. 3d 166, 167-68, 657 N.E.2d 273. Certainly, if defense counsel recognizes a potential conflict in her representation of both clients, she should timely object to her dual representation and move the court to withdraw from representing at least one of the two defendants. After all, an "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *Holloway, supra*, at 485, 98 S. Ct. at 1179. Therefore, many courts have held that an attorney's request for appointment of separate counsel based on representations of conflict of interest should be granted. *Id.* (citations omitted). The *Holloway* Court more precisely found that, in a situation where an attorney does bring a potential conflict to the court's attention, the court should either appoint separate counsel or "take adequate steps to ascertain whether the risk [of conflict] was too remote to warrant separate counsel." *Id.* at 484, 98 S. Ct. at 1178. Failure to make such an inquiry when faced with a timely objection deprives the defendant of his constitutional guarantee of effective assistance of counsel. *Id.* at 484, 98 S. Ct. at 1178-79. Consequently, when a court requires joint representation over objection without making sufficient inquiry, prejudice is presumed, and reversal is required. *Id.* at 488; 98 S. Ct. at 1181.

In some cases, however, neither counsel nor defendant raises an objection to the joint representation. In those cases, a trial court's duty to inquire only arises when it "knows or reasonably should know that a particular conflict exists * * *." *State v. Manross* (1988), 40 Ohio St. 3d 180, 181, 532 N.E.2d 735. Absent any indication to the contrary, a trial court may assume that either the joint representation

presents no conflict or that the lawyer and clients have knowingly accepted the risk of any conflict that may exist. *Cuyler, supra*, at 347, 100 S. Ct. at 1717. In those situations where no objection is raised to the trial court regarding the joint representation, on appeal, the appellant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S. Ct. at 1718.

In light of the aforementioned discussion, our inquiry must begin with whether counsel or defendant raised a timely objection to joint representation that sufficiently alerted the trial court to a potential conflict. This initial inquiry is very close. Technically, on the day trial was to begin, counsel raised an objection to the trial court, stating that she and one of her clients desired that she withdraw from his representation because the defendants had "different needs, desires, want to proceed differently." This statement was made following the realization that a joint plea offer was made that one client wanted to take and the other did not. In response to counsel's "objection," the trial court questioned Reese regarding his desire to obtain separate counsel. Reese replied with a fear that his counsel would not be prepared for trial since she did not file the motion to suppress until the day before trial was to begin. At no time did he mention any conflict of interest. Of course, an individual defendant is rarely sophisticated enough to evaluate the potential conflicts * * *." *State v. Mock* (1972), 32 Ohio App.2d 82, 87, 288 N.E.2d 330 (O'Neill, P.J., concurring), citing *Campbell v. United States* (C.A.D.C.1965), 122 U.S. App. D.C. 143, 352 F.2d 359, 360.

Nonetheless, after the court's inquiry of Reese, his counsel failed to further raise objection to the joint representation. Ms. Snead never pointed out any conflict in representing both defendants to the trial court beyond her statement that they had different needs and desires. In *Holloway*, defense counsel was appointed to represent three co-defendants in a criminal trial. *Holloway, supra*, at 477, 98 S. Ct. at 1175. Beginning a few weeks before trial up to the point the jury was empaneled, counsel made repeated motions to the trial court to appoint separate counsel for the defendants, citing conflict of interest as the reason. The trial court repeatedly denied these motions. During trial, defense counsel's pleas continued when each of his clients wanted to testify and he was placed in a position where he was unable to conduct direct examination of his own witnesses. *Id.* at 478. Still, the trial court refused to conduct an inquiry or appoint separate counsel. Even with this barrage of formal objections, motions and representations, the Supreme Court recognized that perhaps defense

-8-

counsel may have presented the requests for separate counsel more vigorously and in greater detail. *Id.* at 485, 98 S. Ct. at 1179 n1.

We find that counsel's weak reference to the different needs and desires of her clients on the day trial was to begin and Reese's failure to mention conflict of interest as a basis for his request for separate counsel is insufficient to qualify as a "timely objection" to joint representation based  on a conflict of interest. As a result, the trial court was only required to appoint separate counsel or conduct an inquiry if he knew or should have known that a possible conflict of interest existed. See, *Cuyler, supra* at 347, 100 S. Ct. at 1717. Therefore, even if we find an inquiry was required and not conducted, we can only reverse if we find an actual conflict in the record that affected Reese's defense. *Id.* at 348, 100 S. Ct. at 1718.

In this regard, "[a] possible conflict of interest exists where 'interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties.'" *State v. Gillard* (1997), 78 Ohio St. 3d 548, 552, 679 N.E.2d 276, citing *State v. Dillon* (1995), 74 Ohio St. 3d 166, 168, 657 N.E.2d 273. Accordingly, an actual conflict exists when the defendants' interests do at some point diverge with respect to a material aspect of the case. *Id.*, 78 Ohio St. 3d at 553. In other words, an attorney represents conflicting interests "when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." *Id.*, citing *Manross, supra,* at 182. In order for a defendant to demonstrate an *actual* conflict, he must first show "some plausible alternative defense strategy or tactic might have been pursued," that would not necessarily have been successful, but that had enough substance to be a viable alternative. *Id.*, citing *United States v. Fahey* (C.A.1, 1985), 769 F.2d 829, 836. Next, the defendant must show that this alternative defense could not be pursued because of an inherent conflict with counsel's representation of the co-defendant. *Id.* We find no evidence in the record that would have alerted the trial court to such a conflict.

The evidence demonstrated that the Chevy Blazer in Reese and Johnson's possession was stolen because it was rented with a fraudulent credit card. The Blazer was full of merchandise that was stolen that day by the use of fraudulent credit cards. Both defendants told police that they would not say who the Blazer came from and that they knew nothing about the merchandise inside. While it may appear on the surface that the case against Johnson was stronger than the case against Reese, we do not believe the facts were conducive to

-9-

attempting a finger-pointing defense. Johnson was driving the stolen Blazer, he was identified by a clerk at one store, and his picture was on the driver's license bearing the same name as the fraudulent credit cards. However, most of the store clerks reported that two men made the purchases and that all of the purchases were made on that day. But more importantly, Reese had in his pocket a list of credit card numbers, including the one that was used to make many of the purchases that day. The facts inextricably tie both individuals to the whole situation. Moreover, neither defendant testified at trial, so there was no opportunity to even attempt any other defense. Accordingly, we do not find an actual conflict in the record; nor do we find that the trial court knew or should have known of any possible conflict which would have required further inquiry.

All that notwithstanding, even if we were to find that counsel did properly raise an objection to the joint representation, we find that the trial court conducted a sufficient inquiry to determine whether a conflict actually existed. When advised that Reese wanted separate counsel due to different needs and desires, the court specifically inquired of Reese why he desired separate counsel. Reese did not even allude to any conflict of interest, and counsel made no further comments regarding any potential conflict. Upon receiving such limited information, the trial court could have reasonably concluded that the potential for conflict was too remote to require separate counsel. See *Holloway, supra*, at 484, 98 S. Ct. at 1178.

Based on the foregoing, we find that the trial court did not err in overruling counsel's motion to withdraw because the request to withdraw did not sufficiently alert the court to a potential conflict of interest; and even if it had, the court conducted an adequate inquiry to determine that the potential for conflict was so remote that separate counsel was not required. Furthermore, because we found that Reese's counsel was not operating under a conflict of interest, we do not find that she rendered ineffective assistance. Accordingly, Reese's first and second assignments of error are overruled.

*State v. Reese*, 2002 Ohio App. LEXIS 841, *6-19 (Ohio App. 2d Dist. March 1, 2002).

This careful and thorough analysis by the Ohio Court of Appeals applied the United States Supreme Court precedent which is in point. The Court of Appeals concluded the notice of a potential conflict was untimely, that there was no actual conflict of interest, and that the trial court's

-10-

inquiry was in any case sufficient.

Petitioner fails to show any way in which this decision was an unreasonable application of clearly established United States Supreme Court law.  He argues that with separate counsel there could have been an argument that the co-defendant was the principal offender, but that would not have been a defense, only a matter of mitigation.  As the Court of Appeals' analysis makes clear, the evidence would hardly sustain a claim that Petitioner was an unknowing participant in what went on: several of the incriminating credit card numbers were found written out on his person.  Even if the trial court's inquiry could have been more searching, there is not even now any demonstration of an actual conflict of interest.  While Petitioner's interest conflicted with that of his co-defendant over taking the plea agreement, that conflict did not require their lawyer to take any position on behalf of one client which she could not take on behalf of both.  Indeed, counsel advised Petitioner that it was in his best interest to take the joint plea offer and the facts have proved that correct, since he received a stiffer sentence than he would have received if he had accepted the offer.

Petitioner's first ground for relief is without merit.

## Ground Two

In his second ground for relief, Petitioner claims he was denied effective assistance of counsel by reason of his attorney's conflict of interest.  We assume for the purpose of argument that this claim was subsumed under the "insufficient inquiry" claim made in the Ohio Court of Appeals and appealed from there to the Ohio Supreme Court, and thus is not procedurally defaulted.  Nevertheless, for the reasons set forth above with respect to the first ground for relief, Petitioner has

-11-

not established that this claim has any merit.  Specifically, the Court of Appeals decided that there was no showing of any actual conflict of interest between the two co-defendants and that decision is not an unreasonable application of clearly established Supreme Court precedent.

**Ground Three**

In ground three, Petitioner asserts that he was denied his Fourth Amendment rights when the Ohio courts failed to suppress the evidence against him, which he asserts was seized pursuant to an illegal traffic stop.

Federal habeas corpus relief  is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts.  *Stone v. Powell,* 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976).  *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does.  The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism.  Ohio of course has a mechanism for consideration of Fourth Amendment claims – a motion to suppress which is very similar to that used in the federal courts.  Here Petitioner made a motion to suppress, received an evidentiary hearing on it and a ruling, and could have but did not appeal to the Ohio Court of Appeals from the denial.  Since he was given a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, he may not re-litigate it here.  The third ground for relief should be denied on the merits.

-12-

**Ground Four**

In his fourth ground for relief, Petitioner contends he was compelled to be a witness against himself at his sentencing, in violation of his Fifth and Fourteenth Amendment rights. This claim was presented to the Ohio courts only as one of the claims which direct appeal counsel should have raised. Thus this Court can consider only the claim for ineffective assistance of appellate counsel; including claims such as this in an Ohio App. R. 26(B) application does not "resurrect" them for decision on the merits, but only preserves them as part of the claim of ineffective assistance of appellate counsel.

While a criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, *Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *Penson v. Ohio*, 488 U.S. 75, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988), the attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *See Smith v. Murray*, 477 U.S. 527, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986). "In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F. 3rd 674(6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F. 3d 155, 161-62 (6th Cir. 1994).

-13-

The privilege against self-incrimination continues to apply at sentencing in a criminal case. *Mitchell v. United States*, 526 U.S. 314, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999). The Ohio Court of Appeals, in adjudicating this claim of ineffective assistance of appellate counsel, recognized the applicability of *Mitchell* and analyzed the sentencing decision in those terms. It found that, although Petitioner was asked for information which might have been incriminating, his sentence was not enhanced based on his refusal to answer those questions. It noted that the trial judge articulated reasons for the sentence which were separate and distinct from the Petitioner's silence and sufficient to ground the sentence which was imposed without considering his silence. As with the first ground for relief, this Court cannot say that this was an unreasonable application of clearly established Supreme Court precedent.

### Conclusion

The Amended Petition should be denied on the merits. Because these conclusions are not debatable among reasonable jurists, Petitioner should be denied any requested certificate of appealability and permission to appeal *in forma pauperis*.

December 8, 2004.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because

-14-

this Report is being served by mail and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).